## JONES *v.* THE STATE.

No. 10279. February 12, 1935.

J. M. Cowart and H. A. Wilkinson, for plaintiff in erorr.

M. J. Yeomans, attorney-general, R. B. Short, solicitor-general, B. D. Murphy and J. T. Goree, assistant attorneys-general, contra.

ATKINSON, Justice. ■ Dock Jones was tried on the charge of murder of B. F. Singleton by shooting him with a gun. There was evidence as to the nature of the wound through the head of the victim that caused his death, and the gun-wad being found in the wound; also signs of some one having been concealed in weeds near the spot where the body was found. This evidence was sufficient to authorize a finding that the gun was fired at close range, and the homicide committed at the place where the body was found. There was also evidence that the place where the body was found was in the county of indictment and trial. The venue was sufficiently proved, and there was no merit in the special ground of the motion for new trial complaining of insufficiency of the evidence relating to that question.

■ The body was found in a pathway through an uncultivated field that was grown up in weeds. The path was a "cut-off" or a near way from the main road to the home of the victim's father, which was a short distance from the town of Leary. Other evidence tended to show recent repeated statements to witnesses by Jones, in which he complained of refusal of a named woman residing in the town of Leary to receive his attentions, and of Singleton's attentions to the same woman; also of threats to kill Singleton if he did not cease such attentions. A witness testified, that, about 7 o'clock Saturday night preceding the morning the body was found, he saw Jones up town. Jones asked the witness if Singleton was down at the woman's house; the witness answered that he did not know, but that he had seen Singleton up town, who said he was going to change his clothes and go down there; whereupon Jones said if Singleton "was down there he was going to kill him that night." Witness saw the woman shortly afterwards up town, walked home with her, and immediately returned. On his way back he met Jones (about one hour after the above threat) carrying something like a shotgun, who turned out of the road when he saw witness approaching. Other evidence tended to show that Singleton went to the woman's house about 8 o'clock, where he remained until about

2 o'clock with the woman in her room. The house contained three rooms, two of which were occupied by a man and his wife and the third by the woman mentioned above. In the room of the woman was a glass window equipped with a curtain that opened on a porch, and a closed "shutter" window at the side next to the chimney. Occupants of the room could be seen from the outside and could be heard from the outside "if they talked very loud." About half past 8 o'clock, while Singleton was in the room, Jones came upon the porch and stood at the glass window. The woman testified that while she was seated at the glass window, holding back the curtain, she saw him, and let the curtain down; that she did not see anything in his hand, nor did he speak; that in about a half hour she let the curtain back and looked out, but did not see him any more. Another occupant of the building testified that he saw Jones stand on the porch and then walk to the glass window and stand there; that "he had something with him, a gun." The next morning unidentified tracks were seen on the porch and where the person had jumped off on the ground and walked around to the "shutter" window by the chimney. When Singleton left the house that night he said he was going to "the hall." That was the last seen of him alive. His body was found about half past 5 o'clock Sunday morning, at the place and in the condition mentioned above. The path through the field was a short way that one would take in going from the woman's house or the town of Leary to the house of Singleton's father. After the body was found a crowd gathered at the place. Jones was among them. He also attended the burial, but did not go "close" to the body at the place where it was found, nor did he go "near the grave" in which it was buried. In his statement before the jury he denied all knowledge of the homicide, and stated generally that the State's witnesses had sworn falsely, and that prior to his arrest another man had been charged with the crime. The foregoing indicates the substance of all the evidence relied on to prove the crime, and to connect the defendant with its commission. Though entirely circumstantial, the evidence was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, and consequently was sufficient to authorize the verdict. The court did not err in overruling the motion for new trial.

*Judgment affirmed.   All the Justices concur.*